IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                                  CR No. 20-1570 JCH

LUIS GUTIERREZ,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    On August 1, 2022, Defendant Luis Gutierrez filed a *Motion to Dismiss with Prejudice for Violation of his Right to Speedy Trial* (ECF No. 20). The Court has reviewed the motion, response, and reply. Because neither party in the briefing requested a hearing, the Court inquired of the parties by email to determine if they wanted an evidentiary hearing. Both parties stated that the Court could render its decision on the current record, so the Court will decide the motion on the written record. Having considered all the materials presented on the issue, the Court concludes that Defendant's motion should be denied.

    I.    **FACTUAL BACKGROUND**

    According to the Government, Albuquerque Police Department ("APD") officers in late April 2020 investigated calls about gunshots fired at the home of Defendant's wife, who reported she had been receiving multiple threatening calls and text messages from her estranged husband, and an incident in which Defendant tried to kidnap her at gunpoint from her driveway. (*See* Gov.'s Resp. 1, ECF No. 21.) On May 8, 2020, APD detectives, in executing a state search warrant, allegedly found and arrested Defendant, a previously convicted felon, at a local motel, and the search of his room revealed a firearm and ammunition. (*Id.*) The State of New Mexico brought

charges against Defendant for aggravated assault against a household member with use of a deadly weapon and he was held without bond at the Metropolitan Detention Center ("MDC"). (*See* Def.'s Ex. D, ECF No. 20-4; Gutierrez Aff. ¶¶ 2-4, ECF No. 20-3.)

The United States indicted Defendant and issued a warrant for his arrest on August 11, 2020, for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) based on the items seized in the May 8, 2020, search. (Indictment, ECF No. 2). According to the Government, on August 13, 2020, a federal agent served the MDC with a copy of the indictment and arrest warrant and placed a federal detainer on Defendant. (*See* Gov.'s Resp. 2, ECF No. 21.) MDC records do not indicate that Defendant was notified of the federal charges. (*See* Def.'s Ex. F, ECF NO. 20-6.)

At the time Defendant was federally indicted, the President of the United States had declared a national emergency and the Governor of the State of New Mexico declared a state of public health emergency because of the COVID-19 pandemic. *See* Admin. Order, 20-mc-00004-9 (filed Mar. 13, 2020). To take proactive steps to combat the spread of COVID-19, the courts in this district had continued all civil and criminal jury trials, among other measures. *See id.* Because of the pandemic, the federal court permitted matters such as initial appearances to be conducted using video or telephone conferencing. *See* Admin. Order, 20-mc-00004-25 (filed June 26, 2020). The Government asserts that from May 2020 to early March 2022, the United States Marshals Service ("Marshals") instructed the United States Attorney's Office not to file writs for federal defendants in state custody due to the COVID-19 pandemic. (Gov.'s Resp. 2, ECF No. 21.)

On October 28, 2021, Defendant entered a plea of guilty on the state charge of aggravated assault against a household member with use of a deadly weapon, and on November 24, 2021, a state judge sentenced him to four years of incarceration with a suspended two-year sentence.

(Def.'s Ex. D at 1-4, ECF No. 20-4; Gutierrez Aff. ¶ 4, ECF No. 20-3.) His projected discharge date from jail was May 5, 2022, and he spent his entire custodial sentence at MDC. (Def.'s Ex. E at 3, ECF No. 20-5; Gutierrez Aff. ¶¶ 4-5, ECF No. 20-3.) On May 5, 2022, Defendant was first informed by a guard that he would not be released because of the federal warrant, and on May 6, 2022, Defendant was released from MDC to federal custody. (*See* Def.'s Ex. D at 4; Gutierrez Aff. ¶¶ 6-7, ECF No. 20-3.) He appeared for his federal charges on May 9, 2022, was appointed counsel at that time, and was detained pending resolution of the federal case. (*See* Order, ECF No. 9; Clerk's Minute Sheet, ECF No. 13.)

Trial was initially scheduled for July 18, 2022, but on May 31, 2022, defense counsel filed an unopposed motion to continue trial for 60 days to conduct an investigation and prepare any necessary pretrial motions. (Def.'s Mot. 2, ECF No. 17.) The Court granted the continuance of trial until September 19, 2022 (*see* Order, ECF No. 19), and on August 1, 2022, defense counsel filed the motion to dismiss on speedy trial grounds (*see* Def.'s Mot., ECF No. 20).

**II.    ANALYSIS**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. The remedy for a Sixth Amendment speedy trial violation is dismissal of the case with prejudice. *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009). In determining whether a defendant has been deprived of his constitutional right to a speedy trial under the Sixth Amendment, the Court should consider and balance the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Of these factors, the length of the delay is the threshold consideration. *Id.* Only if the delay is "presumptively prejudicial" will the court need to

consider the remaining factors. *United States v. Hill*, 197 F.3d 436, 443-44 (10th Cir. 1999) (citation omitted). The Tenth Circuit has recognized that delays of over one year generally satisfy the requirement of presumptive prejudice. *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) (citing *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006)).

      **A.**      **Length of delay is presumptively prejudicial and favors Defendant**

The speedy trial right attaches when a defendant "is arrested or indicted on federal charges, whichever come[s] first." *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir. 2014). The length of the delay is then measured from that point – "the earlier of either arrest or indictment." *Batie*, 433 F.3d at 1290. The delay period ends with trial or denial of the motion to dismiss. *United States v. Nixon*, 919 F.3d 1265, 1269 (10th Cir. 2019). If the defendant shows presumptive prejudice, the court must then consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Seltzer*, 595 F.3d at 1176. In determining whether the length of the delay weighs in favor of the defendant, a court may also consider the nature and complexity of the charges. *See id.*; *Banks*, 761 F.3d at 1182. The simpler the charges, the more likely a delay will favor the defendant. *See Banks*, 761 F.3d at 1182.

In this case, Defendant was indicted on August 11, 2020. Although a federal arrest warrant was issued that same day, he was not arrested on the federal warrant until May 6, 2022. The Government argues, however, that the delay is only five months, relying on the date he was sentenced in state court. However, the time begins to run on the date that came first – either arrest or indictment. The Court finds that Defendant's speedy trial right attached on the earlier date of federal indictment – August 11, 2020. *Cf. Seltzer*, 595 F.3d at 1176 (using date of federal indictment in determining length of delay). After his arrest and appearance, the Court scheduled his first trial date on July 18, 2022, Defendant moved to continue the trial, and during the period

of continuance, filed the current motion. Because the delay is approximately two years, it is presumptively prejudicial. Moreover, the felon-in-possession charge generally is a simple case, and thus, the length-of-delay factor weighs in favor of Defendant. *See id.* (explaining that first factor weighed in favor of defendant where delay was two years on not-complicated charges of felon-in-possession, drug, and counterfeit charges).

      **B.**      **Logistical difficulties involving the need to prevent the spread of COVID-19 explains the majority of the delay**

The burden is on the government to provide an acceptable reason for the delay. *Banks*, 761 F.3d at 1183. Delays attributable to the defendant do not weigh against the government. *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006). For example, the government will not be held accountable for delays resulting from continuances or motions filed by the defendant. *See Batie*, 433 F.3d at 1291 ("continuances and other motions filed by the defendant do not weigh against the government"); *Banks*, 761 F.3d at 1183 (finding defendants caused delay where they filed "multiple continuances with the district court and argued that they would be prejudiced if the court refused to grant them additional time to prepare"). Accordingly, the most recent delay caused by defense counsel's request for a continuance will not be counted against the government, excluding the time from July 18, 2022, to the September trial date. Even excluding that time, the delay attributable to the Government was nearly two years, so the Court must consider the United States' reason behind the bulk of the delay in bringing Defendant before a federal court to hear the charges against him and appoint counsel.

The Court must assess the "degree to which the government caused the delay." *Batie*, 433 F.3d at 1291. The government's motive in causing the delay is particularly relevant to this factor. *See id.* A delay that was deliberately caused to gain a strategic advantage will weigh heavily against the government, while delays due to negligence or crowded court dockets weigh less heavily

against the government. *Seltzer*, 595 F.3d at 1177. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Doggett v. United States*, 505 U.S. 647, 657 (1992).

The United States argues that it "was not able to writ Defendant from state court due to COVID-19 restrictions at the time he was indicted" and that it did not have the duty to do so because he had not yet been sentenced in state court. (Gov.'s Resp. 8, ECF No. 21.) Turning to the latter argument first, the Tenth Circuit has recognized that "awaiting the completion of another sovereign's prosecution may be a plausible reason for delay in some circumstances, but that does not necessarily mean that it is a justifiable excuse in every case." *Seltzer*, 595 F.3d at 1178. The government has the burden to "make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue." *Id.* Because there are means for the federal government to obtain custody of a prisoner held in state custody, that the defendant was incarcerated is alone not enough to excuse the delay. *Id.*

The Government asserts that "the United States Marshals Service instructed the United States Attorney's Office not to file writs for federal defendants in state custody due to the COVID-19 pandemic" from May 2020 to early March 2022. (Gov.'s Resp. 2, ECF No. 21.) The Government thus suggests that concurrent proceedings would create logistical concerns from transporting Defendant to and from state and federal custody while the COVID-19 pandemic was creating a public health danger.

Showing that concurrent proceedings would be logistically cumbersome can support a decision by the government to await the completion of another sovereign's prosecution. *See Seltzer*, 595 F.3d at 1178. Even without pandemic concerns, the Tenth Circuit has concluded that

the government's approach of avoiding "ping-ponging" a defendant between state and federal custody was permissible. *Nixon*, 919 F.3d at 1270 ("To avoid ping-ponging Mr. Nixon between state and federal custody, federal authorities decided to wait on the state-court proceedings. This approach was permissible."). Even more significantly, "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020). For public health reasons, the District of New Mexico entered Administrative Orders suspending jury trials beginning March 16, 2020, through February 28, 2021, and again on January 14, 2022, through February 13, 2022. *See, e.g., United States v. Barela*, No. 1:20-CR-01228-KWR, 2021 WL 5459645, at *5 (D.N.M. Nov. 21, 2021) (citing 20-MC-00004-09; 21-MC-00004-04); Admin. Order, 22-MC-00004-10 (ECF No. 10) (filed Jan. 14, 2022). Courts nationwide acknowledged the need to continue jury trials in light of the unprecedented COVID-19 pandemic and to safeguard public health. *See id.* (and cited cases). The Government was justified in not transporting Defendant to federal court during the periods in which he could not have a federal trial because of the Court's COVID-19 safety protocols.

Furthermore, Marshals faced great difficulties in the pandemic in trying to balance the rights of detainees with concerns for the health and safety of detainees, other state inmates, Marshals' staff, court staff, and the public. Transporting a state detainee/inmate between state and federal detention facilities created a heightened risk of spreading the virus. This reason is sufficient to support the decision to not writ Defendant while his state proceedings were ongoing, given that the dual proceedings would have resulted in bringing him back and forth between facilities, increasing the risk to public safety. The Court therefore finds that the Government showed a permissible and compelling reason for not taking federal custody of Defendant until the state-court proceedings concluded.

In this case, the state proceedings were ongoing until November 24, 2021, when Defendant was sentenced on the state charges. The Tenth Circuit has recognized a delay in deferring to a state prosecution to efficiently prosecute the defendant may be warranted, but that any delay after a state sentence is imposed may not be. *See United States v. Frias*, 893 F.3d 1268, 1272 (10th Cir. 2018) (agreeing with district court that government's initial delay in deferring to state murder prosecution was warranted but nine-month delay after state sentence was imposed was not). By November 24, 2021, federal jury trials had resumed in this district. On or around that time, however, a new Omicron variant of the COVID-19 virus began causing a "rapid increase of cases resulting from the widespread circulation of the highly contagious Omicron variant." *See* Admin. Order, 22-MC-00004-10 at 1. By January 13, 2022, there was a possibility that the next month would see "the highest daily count totals in New Mexico since the pandemic began." *Id.* at 1-2. Because of the surge in cases, the federal court again suspended jury trials from January 13, 2022, until February 13, 2022. *Id.* at 2. The Court finds that the logistical difficulties in transporting inmates between MDC and the federal detention facilities during the Omicron surge to prevent outbreaks in the respective facilities is sufficient justification to support the Government's failure to writ Defendant to federal court from the time of his sentence until the surge abated.

On February 14, 2022, federal jury trials resumed as conditions improved, and in early March 2022, the Marshals lifted their instructions to the United States Attorney's Office not to seek writs for federal defendants in state custody. The Government asserts that it was not informed by the MDC records manager that Defendant was ready to be picked up until May 5, 2022, but even according to the Marshals' policy, the Government could have obtained a writ in March 2022. The Court thus finds insufficient cause for the Government not to have issued a writ and transported Defendant to federal court from February 14, 2022, until May 6, 2022, so the

Government has failed to justify that two-and-a-half-month delay. *Cf. Frias*, 893 F.3d at 1272-73 (concluding that second factor favored defendant where government gave no explanation for nine-month delay after her state sentencing in bringing her to trial). There is no evidence, however, indicating that the United States delayed this matter for strategic reasons. Consequently, while the short delay that the Government did not justify favors Defendant, it does so only slightly.

      **C.**      **Assertion of speedy trial right weighs in favor of Defendant**

As for the third factor, Defendant's obligation "is not satisfied merely by moving to dismiss after the delay has already occurred." *Batie*, 433 F.3d at 1291. "The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Id.* While a defendant does not inherently waive his speedy trial right by failing to demand a speedy trial, the Tenth Circuit has emphasized that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *United States v. Gould*, 672 F.3d 930, 938 (10th Cir. 2012) (quoting *Barker*, 407 U.S. at 532). "Thus, if the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against the defendant." *Id. See also United States v. Black*, 830 F.3d 1099, 1120 (10th Cir. 2016) ("The third *Barker* factor weighs against a defendant who weakly asserts his speedy-trial right long after he could have, but the factor weighs in favor of a defendant who early, frequently, and forcefully asserts his right.").

The bulk of the delay occurred when Defendant was not aware of the federal prosecution, so he could not assert his speedy trial rights.[1] Although Defendant requested one trial continuance,

---

[1] Defendant filed an affidavit averring he was not aware of the federal charges until the eve of his release from state custody. (*See* Gutierrez Aff. ¶ 6, ECF No. 20-3.) Although a federal agent served the warrant on MDC, the Government did not present evidence that Defendant became aware of the federal charges as a result of that service. *Cf. United States v. Vaughan*, 643 F. App'x 726, 730 n.4 (10th Cir. Mar. 23, 2016) (unpublished) (noting that government did not show that defendant was notified of federal detainer or knew of indictment where government only had evidence that detainer was transmitted to State). Defendants' evidence indicates that there was not a standard practice at MDC for Records to notify an inmate when he is booked on an additional case. (*See* Def.'s Ex. F, ECF No. 20-6.)

he asserted his speedy trial right shortly after the date when trial was first scheduled, and less than three months from when he was transferred to federal custody and became aware of the charges. The purpose of the continuance was to investigate the charges and research pretrial motions, purposes necessary for defense counsel to assert Defendant's speedy trial rights through a pretrial motion. The record does not show multiple continuances by Defendant or other undue delay caused by Defendant. The Court finds that this third factor weighs in favor of Defendant.

### D. Defendant has failed to prove non-speculative prejudice

Unless there is evidence of extreme delay, not present here, the defendant has the burden of showing prejudice. *See Black*, 830 F.3d at 1121-22; *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015) ("Generally, we require a delay of at least six years before the defendant is relieved of his burden to present specific evidence of prejudice."). Prejudice is assessed "in light of the interests that the speedy trial right was designed to protect." *Seltzer*, 595 F.3d at 1179. These interests include: (i) prevention of oppressive pretrial incarceration; (ii) minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be hindered or impaired. *Id.* Impairment of the defense is the most important of these interests, with the prevention of oppressive pretrial incarceration being the second most important. *Banks*, 761 F.3d at 1184.

Defendant argues that the delay subjects him to significantly longer incarceration. According to Defendant, under the United States Sentencing Guidelines ("U.S.S.G."), if he had been sentenced in this federal case before he finished his state sentence, he would have met the four conditions of § 5G1.3(b)(2) and received the benefit of a sentence adjustment or a concurrent sentence under U.S.S.G. §5G1.3(b). Defendant also argues he was deprived of the opportunity to earn good-time credits. Defendant also contends that he has suffered anxiety and that the delay

deprived him of access to counsel and the protection of the Speedy Trial Act and Interstate Agreement on Detainers ("IAD"), both of which protect the right to speedy trial.

### 1. Whether the delay subjects Defendant to longer incarceration

Turning first to Defendant's argument about application of a mandatory sentencing guideline, Defendant relies on U.S.S.G. § 5G1.3(b)(1) and (b)(2). Section 5G1.3(b) provides:

> If … a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction … the sentence for the instant offense shall be imposed as follows:
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b)(1)-(2).

The Government does not dispute or address Defendant's representations concerning whether §5G1.3(b) would have applied here had he been sentenced in this federal case before he finished his state sentence. Instead, the Government argues that it does not amount to prejudice because Defendant can ask this Court for any sentence that he deems appropriate, and the Court can take into consideration any prejudice suffered by reducing his sentence should he be found guilty at trial. The Court agrees that the focus on the sentence Defendant may receive is too speculative to show prejudice, given the Court's discretion to factor into a reduced sentence the arguments Defendant makes concerning application of the guideline. *See Nixon*, 919 F.3d at 1273 (the defendant's burden in showing prejudice requires more than showing a mere possibility of prejudice).

Moreover, Defendant has not cited a case indicating that the court may even consider an impact on sentencing in determining the constitutional validity of pretrial proceedings. *See United*

*States v. Jumaev*, 20 F.4th 518, 543 (10th Cir. 2021) (petition for cert. filed Dec. 8, 2021) (explaining that defendant's argument that he would have spent less total time in custody carried no water because defendant cited no case that has treated the sentence imposed *post*-conviction as relevant to assessing the constitutional validity of *pre*trial proceedings). The Tenth Circuit does not appear to consider an impact on concurrent sentencing to be a consideration for the prejudice factor in the Sixth Amendment speedy trial right analysis, and if it is, it has very little weight. *See id.* (explaining that, even if a defendant's sentence can be valid component of speedy trial analysis, defendant failed to show why sentence imposed rendered pretrial incarceration oppressive where his period of pretrial detention fell within applicable sentencing guidelines range); *Frias*, 893 F.3d at 1274 (finding little to no prejudice from defendant missing her window to ask state court to modify or reduce her state sentence so as to mitigate effect of a consecutive federal sentence and effectuate state court's intent of concurrent sentence or from her losing a chance for parole in state case because she was in federal custody). For similar reasons, Defendant has not shown the Court that considerations of good time credit should factor in the speedy trial prejudice analysis. Moreover, again, the Court may consider such an argument in evaluating the appropriate sentence, should that become necessary, and considerations of good time are too speculative to establish prejudice. *See Nixon*, 919 F.3d at 1274-76 (explaining that no precedent exists to support theory of prejudice from lost opportunity to earn good time credits, Supreme Court precedent suggests that prejudice can only come from incarceration before trial, not after it; and is too speculative to support prejudice where it is uncertain how defendant would behave and how authorities would exercise their discretion).

   2. **Minimization of anxiety and concern of the accused**

Next, Defendant argues he has suffered significant anxiety and depression and insomnia as a result of the delay and the failure to inform him of the federal detainer until the eve of his anticipated release from state custody. (*See* Def.'s Aff. ¶ 16, ECF No. 209-3.) In response, the United States argues that the mental anguish Defendant may have suffered does not amount to prejudice. To find this factor in favor of the defendant, the defendant must show some special harm that distinguishes his case that is different from the harm suffered by any other arrestee awaiting trial. *Frias*, 893 F.3d at 1273. Having considered the record, the Court finds that Defendant failed to present enough evidence to show a special harm that distinguishes his case from the anxiety and concern of other pretrial detainees. *See id.* This factor thus does not weigh in favor of Defendant.

### 3. Access to counsel and protection of Speedy Trial Act and Interstate Agreement on Detainers

Defendant argues that the delay deprived him of access to counsel who could have asserted his rights under the Speedy Trial Act and IAD. He relies on two district court cases that in turn relied on *Seltzer*, which all concluded that the defendant had been prejudiced by the delay in his initial appearance because it deprived him of a chance to invoke his statutory rights under the Speedy Trial Act and IAD at an earlier date. *See Seltzer*, 595 F.3d at 1180-81. *See also United States v. Gomez*, No. 20-CR-01622 MV, Mem. Op. and Order 2, 12-13 (ECF No. 46) (D.N.M. June 10, 2022).

In *Seltzer*, the defendant was indicted on federal charges while he was serving a sentence on unrelated state drug charges. 595 F.3d at 1173. The government decided not to proceed with his case until after his state proceedings on the unrelated charges were completed. *Id.* at 1174. The resulting delay was approximately two years. *Id.* at 1176. In the meantime, the Government entered into a plea deal with Mr. Seltzer's co-defendant, and Mr. Seltzer attempted to obtain bond on the state charges, which was denied because of the federal detainer. *Id.* at 1173-74. Mr. Seltzer asserted

13

his speedy trial rights and attempted to appear before a magistrate judge for arraignment, but each time, the Government informed his defense attorney that he would not appear until the state prosecution was complete. *See id.* at 1174. The Tenth Circuit held that this resulted in a Catch-22 for the defendant that prejudiced him in three ways. *Id.* at 1179-80. First, it concluded that the delay added to the defendant's pretrial incarceration because the defendant was prevented from posting bond in the state case because of the federal detainer, but the federal government was not bringing him to federal court, ensuring that he would remain in jail until the federal prosecution commenced. *See id.* at 1180. It next concluded that the defendant suffered an impairment in his ability to defend and prepare his case where he was denied access to the assistance of counsel for over six months, and during that time, the government appeared *ex parte* before the magistrate judge. *See id.* Finally, the Tenth Circuit concluded the defendant was prejudiced by the delay in his initial appearance because he was deprived of a chance to invoke his rights under the Speedy Trial Act at an earlier time. *Id.*

Subsequently, the Tenth Circuit clarified that a wait to assert a statutory speedy trial clock right "is implicit in any delay and therefore fails to establish the requisite prejudice necessary to trigger a constitutional delay," especially when the defendant cannot show any lost opportunities from the delay (unlike the defendant in *Seltzer*). *United States v. Frias*, 893 F.3d 1268, 1274 (10th Cir. 2018). The Tenth Circuit has continued to uphold the reasoning in *Frias* that distinguishes the facts therein from those in *Seltzer*, making clear that "the lost opportunity to invoke the Speedy Trial Act constituted prejudice in *Seltzer* only because the defendant had shown other lost opportunities for his defense during the delay period." *Nixon*, 919 F.3d at 1277.

Here, Defendant has not shown any lost opportunities from the delay. Although his access to counsel on the federal charges was delayed, he has not shown how his trial defense would be

impaired from the delay in receiving counsel. Defendant has not shown that the delay resulted in the loss of specific evidence or the unavailability of witnesses, ways the Tenth Circuit found can prove impairment of a defense. *See Frias*, 893 F.3d at 1273. Moreover, this case contrasts with *Seltzer* where the defendant could show impairment by the fact that the government appeared *ex parte* in front of the magistrate judge and the defendant's accomplice was promptly brought to court and cooperated, an opportunity Mr. Seltzer did not get because of the delay. *See id.* at 1274 n.3 (distinguishing *Seltzer*, 595 F.3d at 1174, 1180). Defendant has thus not established an impairment to his trial defense.

Unlike in *Seltzer*, the federal detainer did not assure that Defendant would remain in jail until the federal prosecution commenced. Defendant remained in state custody until May 5, 2022, as he served out his state sentence. The entirety of his detention until May 5, 2022, was part of his two-year non-suspended sentenced. At that point, he was transferred to federal custody. Defendant has not been subject to oppressive pretrial incarceration. Defendant has not convinced the Court that he has suffered prejudice from the delay.

### 5. After balancing the factors, no Sixth Amendment speedy trial violation occurred

For the reasons given *supra*, the first three factors favor Defendant, but only slightly. Defendant, however, failed to show prejudice against him from the delay. The Tenth Circuit is "generally reluctant to find a speedy trial violation without prejudice." *Frias*, 893 F.3d at 1275 (quoting *United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012). In this case, the most important factor, prejudice to Defendant, is not present. After balancing the factors, the Court finds that there was no constitutional violation in the delay. *Cf. Frias*, 893 F.3d at 1275 (affirming district court's conclusion that there was no constitutional speedy trial violation, even though first three factors slightly favored defendant, when the most important factor, prejudice, did not).

15

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Dismiss with Prejudice for Violation of his Right to Speedy Trial* (**ECF No. 20**) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**